IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAVID BRANDON,                                    )
                                                  )
COURTLAND DANTZLER-BEY, and                       )
                                                  )
KHADIZAH BROWN,                                   )
                                                  )
                     Plaintiffs,                  )
                                                  )
v.                                                )        Case No. 10-1065
                                                  )
CITY OF MOLINE ACRES,                             )        JURY TRIAL REQUESTED
a municipal corporation,                          )
                                                  )
and                                               )
                                                  )
FRED HODGES,                                      )
in his individual capacity as the former         )
Mayor of the City of Moline Acres,               )
                                                  )
and                                               )
                                                  )
MICHELE DESHAY,                                   )
in her official capacity as the Mayor of         )
the City of Moline Acres and in her              )
individual capacity as a former                   )
Alderwoman of the City of Moline Acres,          )
                                                  )
and                                               )
                                                  )
IRA RICE and LARRY THOMAS,                        )
in their individual capacities as former         )
Aldermen of the City of Moline Acres,            )
                                                  )
VICTORIA REDDIC, DARLENE BELL,                    )
and JENNIFER ERBY,                                )
in their official capacities as Alderwomen       )
of the City of Moline Acres,                      )
                                                  )
and                                               )
                                                  )

SHONTE HARMON YOUNG,                    )
individually and in her official capacity  )
as an Alderwoman of the City of Moline  )
Acres,                                  )
                                        )
                   Defendants.          )

## COMPLAINT

## PARTIES & JURISDICTION

1.      Plaintiff, David Brandon (hereinafter "Brandon") is an individual with his

place of residence in the City of St. Louis, Missouri in the Eastern Division of the Eastern

District of Missouri.  At all times relevant herein, he was employed as a police officer

with the City of Moline Acres.

2.      Plaintiff, Courtland Dantzler-Bey (hereinafter "Bey"), is an individual

with his place of residence in St. Louis County, Missouri in the Eastern Division of the

Eastern District of Missouri.  At all times relevant herein, he was employed as a police

officer with the City of Moline Acres.

3.      Plaintiff, Khadizah Brown (hereinafter "Brown") is an individual with her

place of residence in Lincoln County, Missouri in the Eastern Division of the Eastern

District of Missouri.  At all times relevant herein, she was employed as a corrections

officer with the City of Moline Acres.

4.      Defendant City of Moline Acres, Missouri (hereinafter "City" or "Moline

Acres") is a municipal corporation organized under Missouri law, and is classified as a

Fourth Class City.  The municipality lies in the Eastern Division of the Eastern District of

Missouri.

5.      Defendant Fred Hodges (hereinafter "Hodges") was at all times relevant

herein Mayor of the City.  He is an individual with his place of residence in St. Louis

2

County, Missouri in the Eastern Division of the Eastern District of Missouri.  He is sued in his individual capacity only.

6.      Defendant Michele DeShay (hereinafter "DeShay") was at all times relevant herein a member of the Board of Aldermen (hereinafter "Board") of the City. She is currently the Mayor of the City.  At all times relevant herein and currently she resides in St. Louis County, Missouri in the Eastern Division of the Eastern District of Missouri.  She is sued in both her individual and official capacities.

7.      Defendants Ira Rice (hereinafter "Rice") and Larry Thomas (hereinafter "Thomas") were at all times relevant herein Aldermen of the City.  They are residents of St. Louis County, Missouri in the Eastern Division of the Eastern District of Missouri. They are sued in the individual capacities only.

8.      Defendants Victoria Reddic, Darlene Bell, and Jennifer Erby are currently Alderwoman of the City.  They are residents of St. Louis County, Missouri in the Eastern Division of the Eastern District of Missouri.  They are sued in their official capacities only.

9.      Defendant Shonte Harmon-Young (hereinafter "Young") was at all times relevant herein and is currently an Alderwoman of the City.  She is a resident of St. Louis County, Missouri in the Eastern Division of the Eastern District of Missouri.  She is sued in both her individual and official capacities.

10.      This action is brought pursuant to 42 U.S.C. §1983, as well as the First Amendment to the United States Constitution.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Plaintiffs further invoke the supplemental jurisdiction of this Court to hear and decide claims arising under state law

pursuant to 28 U.S.C. §1367.

11.     Plaintiffs request a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

12.     Venue is proper in the Eastern District of Missouri, because all Defendants reside in that district and all of the events complained of herein occurred in that district.

13.     Upon information and belief, the City maintains a policy of insurance with respect to tort claims filed against it, and therefore, to the extent that the City may assert the defense of sovereign immunity with respect to any tort claims set forth below, the City has waived such defense under the provisions of §537.610 R.S.Mo. by maintaining such policy of insurance.

14.     The acts complained of herein were taken by those with final policy making authority and/or part of a pattern of unconstitutional misconduct that was so pervasive as to constitute the policy, custom, usage, or practice of the Defendants so as to be official municipal policy designed to violate City employees First Amendment free speech rights so as to chill employees in the exercise of those rights.

15.     Defendants either engaged in the conduct as set forth herein or received notice of a pattern of unconstitutional acts committed by Hodges and demonstrated deliberate indifference to such conduct or tacitly authorized the constitutional violations alleged herein, failed to take sufficient remedial action, so that their failure to act proximately caused Plaintiffs constitutional injuries alleged herein.

## FACTS COMMON TO ALL COUNTS

16.     G. Thomas Walker, who is not a Plaintiff herein but who has settled a separate lawsuit with Defendants City, Hodges, DeShay, and Rice, was hired as the Chief

4

of Police for the City on or about October 28, 2001.  He faithfully performed his duties as Chief of Police until he was wrongfully terminated on or about September 25, 2007 as set forth in more detail below.

17.     On or about June 19, 2007, Walker and Moline Acres police officers, Bey and Wayne Burns were fired by Hodges in violation of state law and/or the City's municipal code.  Ultimately, Walker was reinstated after his illegal termination by Hodges but Bey was not.

18.     On or about September 13, 2007, Walker directed a Memo to the Board requesting that it bring articles of impeachment against Hodges for interfering with police officers in the performance of their duties and/or illegally directing or attempting to abate the legal discharge of their duties.

19.     Hodge's had previously been impeached while serving on the Board for, upon information and belief, impersonating a police officer to obtain business discounts, interfering with police officers in the performance of their duties, and illegally using the City's credit card to purchase personal items.  Despite his previous impeachment, Hodges was later elected to the Board of Aldermen and in April 2007, he was elected Mayor of the City.

20.     More specifically, Walker's September 13, 2007 memo advised the Board that the Mayor had interfered with police duties as follows:

     a.     On or about June 15, 2007, Hodges ordered a police officer to tow a vehicle from the residence of a former Mayor and political foe, although the individual had committed no towable offense;

     b.     In May 2007, Hodges instructed an officer to investigate a

5

commercial vehicle parked in the City.  After the vehicle was ticketed by the officer, Hodges, using profanity, directed the officer to instruct the owner to move the commercial vehicle and to tell the owner if the owner did not like it the owner could see Hodges.  Because this officer advised the owner that action was being taken against him at the Mayor's request at the Mayor's direction, the Mayor threatened to fire the next officer who made a similar statement, causing the officer involved in this incident to feel threatened in her job after only doing what the Mayor told her to do.

      c.     Hodges instructed Walker to conduct D.W.I. check points every weekend at a local business owner's establishment if he would not allow his parking lot to be used for an annual circus held in the City.

      d.     On or about June 2, 2007, Hodges ordered a police officer to release a fugitive wanted by another police agency, destroy tickets issued by the officer for moving violations that occurred within the City, and return to the man the vehicle that had been towed after the man was arrested.  The man ordered released is the Mayor's son-in-law.

21.     On September 19, 2007, Walker was placed on administrative leave in retaliation for the memo he had issued to the Board detailing the Mayor's interference with the performance of police officers' duties and requesting the Mayor's impeachment.

22.     On the morning of September 25, 2007, Walker met with an assistant prosecuting attorney for the County of St. Louis and provided information regarding alleged illegal activity involving the Mayor.

23.     On the evening of September 25, 2007, a meeting of the Board was held.

6

A motion was made to terminate Walker by Rice and seconded by DeShay, who as set forth above, was then an alderwoman at that time.  Both Rice and DeShay, political allies of the Mayor, then voted for the termination of Walker.  While two aldermen/women, Shonte Harmon-Young and Larry Thomas, voted against Walker's termination, resulting in a tie vote, Hodges was permitted to break the tie and fire Walker  despite Hodges' personal interest in the outcome of the vote.

## FACTS COMMON TO BRANDON'S CLAIMS

24.     Brandon was hired as a police officer for the City on or about April 21, 2006.  He faithfully performed his duties as a police officer from the time he was hired by the City, never incurring discipline and receiving positive performance evaluations. Brandon was an at-will employee of the City, terminable at the will of a majority of the Board with the Mayor's support or upon a two-thirds vote of the Board, without the Mayor's support.

25.     In June 2007, before Walker was fired by Hodges on June 19, 2007, Hodges, a Moline Acres police officer named Glen Rogers (hereinafter "Rogers"), and a reserve officer for the City named Charles Dawson met with Brandon.  Hodges advised Brandon that he wanted Brandon's help getting Walker fired.  Brandon advised Hodges that he would not cooperate in the scheme.  Nonetheless, later that same day Rogers contacted Brandon and asked him to call other police officers to "dig up dirt" on Walker, which Brandon refused to do.

26.     Brandon advised Walker of Hodge's conversation with him.  When it became known that Hodges had met with Brandon and other Moline Acres police officers in an effort to get Walker fired before his termination on June 19, 2007, Walker was

ultimately reinstated.

27.     Shortly after Brandon refused to cooperate in the scheme to cause
Walker's termination and made it known to others, upon information and belief, Hodges,
through Rogers, started retaliating against Brandon by investigating his service calls in an
effort to cause his termination.

28.     On or about September 25, 2007, Brandon was on the parking lot of the
Moline Acres City Hall after Walker's second termination by Hodges, DeShay, and Rice.
Brandon advised members of the media about his previous conversation with Hodges and
Rogers in which Hodges had requested Brandon's assistance in getting Walker fired and
the improper chain of events leading up to Walker's termination.

29.     After Brandon was observed talking to the news media about Walker's
wrongful termination and Hodges' efforts to cause Walker to be fired, Brandon contacted
the Mayor by cell phone to advise him that he was calling off sick.  The Mayor then
advised Brandon that he was relieved of his duties.

30.     The next day September 26, 2007, Hodges posted a sign stating that
Brandon and another Moline Acres Police Officer, Shaun Campbell, were "not allowed in
the building until further notice."

31.     Brandon was medically approved for a return to duty on September 27,
2007.

32.     Thereafter, Brandon attempted to meet with the Mayor to determine why
he was relieved of duty.  He was instructed by the City Clerk, at the mayor's direction, to
return all Department issued equipment before he would receive his last pay check from
the City.  At that time, Brandon did as instructed and returned all Department issued

equipment to the City.

33.     Brandon (and Campbell) attempted to meet with Hodges one additional time in September 2007 in an effort to retain their jobs with the City.  Brandon and Campbell were told by Detective David Bobo of the Moline Acres Police Department that they would have to leave City Hall or they would be arrested.

34.     Brandon obtained another job in law enforcement with Velda City after his wrongful termination by Hodges.  After he secured alternative employment, Hodges on two separate occasions in October 2007 attempted to have Brandon terminated by Velda City as part of his effort to retaliate against Brandon for speaking to the media.

35.     Additionally, upon information and belief, after Brandon's wrongful termination, Rogers met with an inmate in the St. Louis County Justice Center that had been arrested by Brandon.  Rogers attempted to induce the inmate to falsely report that Brandon had used excessive force against the inmate in return for Roger's assistance in getting the inmate out of jail.  The inmate refused to cooperate in the scheme and instead reported it.  Upon information and belief, Hodges was behind this scheme as part of the effort to discredit Brandon because he had reported Hodges' misconduct in firing Walker to the media.

## FACTS COMMON TO BEY'S CLAIMS

36.     Bey began working  as police officer for the City in September 2001, as a reserve officer.  He was hired as an employee of the City in April or May 2002.  He faithfully performed his duties as a police officer from the time he was hired by the City, never incurring discipline, advancing in rank, and receiving positive performance evaluations.  Bey was also an at-will employee of the City, terminable at the will of a

majority of the Board with the Mayor's support or upon a two-thirds vote of the Board, without the Mayor's support.

37.     On or about November 20, 2004, Moline Acres Police Officer Tim Fletcher issued a state DWI citation to a friend of Hodges.

38.     Hodges contacted Bey, who as a supervisor at the time sent state issued DWI citations to the state for disposition.  Hodges asked Bey to "fix" the ticket for Hodges' friend by failing to submit the ticket to the State.

39.     Bey refused to fix the ticket and additionally advised Walker in writing that Hodges had asked him to "fix" a DWI ticket for a friend, which he refused to do. Bey requested that he not be retaliated against for refusing to "fix" the ticket or for reporting Hodges actions to the Chief of Police.

40.     While several years passed between this incident and Bey's termination, when Hodges became mayor in April 2007, he told friend(s) he would "fire Bey's a--" and also told the friend(s) that firing Bey was "personal" and related to the incident when Bey refused to "fix" a DWI ticket and reported Hodges' request that the ticket be fixed.

41.     As set forth above, on or about June 19, 2007, Bey, together with Walker and Officer Burns, were fired by the Defendants.

42.     Upon information and belief, no vote was taken by the Board of Aldermen before these officers were terminated by Defendants.  As set forth above, Walker was brought back to work several days later.  Bey and Burns were not returned to their duties.

43.     Bey's request for a hearing before the City's Board of Aldermen regarding his illegal termination was ignored by it, and Bey was never reinstated in his employment with the City after his discharge.

## FACTS COMMON TO BROWN'S CLAIMS

44.     Brown was hired as a corrections officer for the City on or about March 20, 2002.  She faithfully performed her duties as a corrections officer from the date she was hired by the City, receiving positive performance evaluations.

45.     On July 5, 2007, Brown attended a meeting at the City at which the Mayor and Board of Aldermen were also present.  During this meeting, Brown expressed her personal concern that the Board's payments to itself reduced the City's budget for the police department.

46.     On or about July 17, 2007, Hodges suspended Brown without pay, pending investigation.  The alleged basis for Brown's suspension was that two weeks earlier Hodges claimed to have personally witnessed Brown provide a manila envelope containing confidential City information to a former City police officer.

47.     While Hodges could not have witnessed any incident between Brown and the former police officer at the time Hodges claimed, Brown explained to Hodges that the former officer was her mentor and that she had provided this former officer with a paper on gun control that she had written for a class she was taking.  The former officer reviewed the paper in the City Hall parking lot and then returned it to Brown in the same manila envelope

48.     Although Hodges claimed to have personally witnessed the event, he made no effort to intervene and retrieve the "confidential City information" he claims that Brown provided to the former police officer.  When Brown questioned Hodges as to why he did not stop her on the day of the alleged incident if he saw her providing "confidential City information" to a former city employee, Hodges had no explanation.

49.     Upon information and belief, no investigation was ever conducted into the alleged incident involving Brown by the City.  Instead, the City hired a corrections officer to replace Brown shortly after she was placed on unpaid suspension.

50.     On or about August 6, 2007, Brown directed correspondence to Walker, requesting a meeting to review her suspension.  In Brown's correspondence, she stated a willingness to take a lie detector test to put this matter behind her, if the mayor was willing to do the same.  No meeting was ever scheduled.

51.     Brown made several additional telephone requests of the City and its Board through the City Clerk to be given the right to be heard on her suspension without pay by Hodges.  The City did not respond to Brown's telephone requests.  It was not until Brown retained counsel to represent her that the City finally granted her a hearing to challenge her unpaid suspension by Hodges.  This hearing was held on November 13, 2007.

52.     After a hearing before the Board of Aldermen on November 13, 2007, Brown was reinstated by the Board, effective November 17, 2007.  However, she was not reinstated with back-pay even though her suspension had been wrongful.

53.     Brown sustained lost wages from July 17, 2007 through November 17, 2007 as a result of the retaliatory actions taken against her by Hodges.

## COUNT I -- 42 U.S.C. SECTION 1983
## VIOLATION OF BRANDON'S S FIRST AMENDMENT
## RIGHT TO FREE SPEECH

For Count I of Plaintiff Brandon's cause of action against all Defendants, he states as follows:

54.     Plaintiff incorporates by reference as if fully set forth herein paragraphs 1

through 53 of this Complaint.

55.     Brandon was terminated by the Defendants as set forth herein and/or the

Defendants demonstrated deliberate indifference to or tacitly authorized the constitutional

violation alleged herein after notice and failed to take sufficient remedial action, so that

their failure to act proximately caused Plaintiff's constitutional injuries alleged herein.

56.     Brandon's speech, and more specifically, his statements to the

media made in his personal capacity at a reasonable time and in a reasonable manner of

the wrongful circumstances surrounding Hodges' termination of the City's Police Chief,

Walker, was a motivating factor and/or played a part in the Defendants' decision to

discharge Brandon.

57.     Brandon's speech set forth in paragraph 56 above constituted speech

regarding matters of public concern, particularly when an elected official is misusing his

position to fire a City employee for political and/or other inappropriate reasons to conceal

his own misconduct.

58.     Brandon's constitutionally protected interest in free speech regarding

matters of public concern outweighs any interests Defendants might have in preventing

such speech.

59.     Brandon's protected speech made at a reasonable time and in a reasonable

manner did not render the City's government inefficient, and Brandon's speech did not

disrupt City operations in any way.

60.     Brandon's termination qualifies as an adverse employment action made by

the Defendants acting under color of state law.

61.     Brandon's termination by Defendants under color of state law violates his

rights secured by the Constitution of the United States, specifically the First Amendment.

62.     As a direct and proximate result of Brandon's termination by Defendants for exercising his First Amendment right to free speech, taken under color of law, Brandon has sustained and will continue to sustain lost wages and other benefits of employment, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation.

63.     The conduct of Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Brandon's constitutional rights as set forth above, and therefore, an award of punitive damages is warranted and necessary to punish Defendants in their individual capacities and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Brandon prays this Court to enter judgment in his favor and against the Defendants and thereafter:

A.     Order Defendants to make Plaintiff Brandon whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B.     Award damages to Plaintiff Brandon for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation;

C.     Award Plaintiff Brandon punitive damages against the Defendants named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiff Brandon the costs of this action, together with his reasonable attorneys' fees; and

E.       Grant such other and additional relief as may appear to the Court to be

equitable and just under the circumstances.

<u>COUNT II – BRANDON'S WRONGFUL DISCHARGE IN VIOLATION
OF PUBLIC POLICY – WHISTLEBLOWING</u>

For Count II of Plaintiff Brandon's cause of action against all Defendants, he

states as follows:

64.      Plaintiff incorporates by reference as if fully set forth herein paragraphs 1

through 63 of this Complaint.

65.      Brandon entered into the performance of his duties as a police office for

the City of Moline Acres and duly performed his duties under the terms and conditions of

his employment until his wrongful termination by Defendants on September 25, 2007.

66.      Brandon was discharged by the Defendants because he had reported to the

media the true circumstances surrounding Walker's September 25, 2007 termination, to

include Hodges' role in Walker's termination.

67.      Brandon remains ready, willing and able to continue in his position as a

police officer for the City and to perform all the terms and conditions of that position.

68.      Hodges was aware of Brandon's whistle blowing activity when he was

fired by Defendants.

69.      Brandon's termination was in violation of Missouri public policy, which

prohibits at-will employees from being terminated for reporting misconduct that violates

Missouri law or public policy.  Specifically, Brandon reported an elected official's efforts

to fire an appointed officer of the City for political reasons in a manner that violated the

laws of the State of Missouri, apparently as part of a smear campaign against Walker.

70.      As a result of his termination in violation of public policy, Brandon has

sustained and will continue to sustain lost wages and other benefits of employment and has suffered emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

71.     Defendants' conduct was outrageous because of their evil motive and reckless indifference to the rights of Brandon in wrongfully terminating his employment in retaliation for reporting the wrongful acts of Hodges, and therefore, an award of punitive damages is warranted and necessary to punish Defendants in their individual capacities and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Brandon prays this Court to enter judgment in his favor and against the Defendants and thereafter:

A.     Order Defendants to make Plaintiff Brandon whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B.     Award damages to Plaintiff Brandon for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

C.     Award Plaintiff Brandon punitive damages against the Defendants named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiff Brandon the costs of this action, together with his reasonable attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT III – BRANDON'S WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY – DISCHARGE IN VIOLATION OF STATE LAW

For Count III of Plaintiff Brandon's cause of action against all Defendants, he states as follows:

72.     Plaintiff incorporates by reference as if fully set forth herein paragraphs 1 through 71 of this Complaint.

73.     As set forth above the City is a fourth class city organized and existing under the laws of the State of Missouri.

74.     The public policy of the State of Missouri with respect to the removal of appointive officers of fourth class cities to include police officers is set forth in § 79.240 R.S.Mo., which states as follows:

> The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation.   See Exhibit 1 attached hereto and incorporated by reference herein.

75.     Plaintiff's termination violates the public policy of the State of Missouri as set forth in § 79.240 because it occurred without the consent of a majority of all the members of the elected Board of Aldermen, and as a result to further Hodges' political agenda to retaliate against Brandon for blowing the whistle on his misconduct, rather than in the best interest of the City.

76.     As a result of his termination in violation of public policy, Brandon has sustained and will continue to sustain lost wages and other benefits of employment and has suffered emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

77.     Defendants' conduct was outrageous because of their evil motive and reckless indifference to the rights of Brandon in wrongfully terminating his employment in violation of the public policy of the State of Missouri as set forth in § 79.240 R.S.Mo., and therefore, an award of punitive damages is warranted and necessary to punish Defendants in their individual capacities and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Brandon prays this Court to enter judgment in his favor and against all Defendants and thereafter:

A.      Order Defendants to make Plaintiff Brandon whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B.      Award damages to Plaintiff Brandon for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

C.      Award Plaintiff Brandon punitive damages against the Defendants named herein in their individual capacities in such sums as this court believes will serve to punish them and to deter them and others from like conduct;

D.      Award Plaintiff Brandon the costs of this action, together with his reasonable attorneys' fees; and

E.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT IV -- 42 U.S.C. SECTION 1983
## VIOLATION OF BEY'S FIRST AMENDMENT RIGHT TO FREE SPEECH

For Count IV of Defendants Bey's cause of action against all Defendants, he states as follows:

78.     Plaintiff incorporates by reference as if fully set forth herein paragraphs 1 through 77 of this Complaint.

79.     Bey was terminated by the Defendants as set forth herein and/or the Defendants demonstrated deliberate indifference to or tacitly authorized the constitutional violation alleged herein after notice and failed to take sufficient remedial action, so that their failure to act proximately caused Plaintiff's constitutional injuries alleged herein.

80.     Bey's speech, and more specifically, his private expression to the Chief of Police at a reasonable time and in a reasonable manner of Hodges' request that Bey "fix" a DWI ticket for one of Hodges' friends, Bey's refusal to do so, and his request that he not be retaliated against for refusing to "fix" a DWI ticket at the Mayor's request were a motivating factor and/or played a part in the Defendants' decision to discharge Bey.

81.     Bey's speech set forth in paragraph 80 above constituted speech regarding matters of public concern, particularly when an elected official is using his position to have a criminal charge "fixed."

82.     Bey's constitutionally protected interest in free speech regarding matters of public concern outweighs any interests Defendants might have in preventing such speech.

83.     Bey's protected speech made at a reasonable time and in a reasonable manner did not render the City's government inefficient, and Bey's speech did not disrupt City operations in any way.

84.     Bey's termination qualifies as an adverse employment action authorized and approved by the Defendants acting under color of state law.

85.     Bey's termination by Defendants under color of state law violates his rights secured by the Constitution of the United States, specifically the First Amendment.

86.     As a direct and proximate result of Bey's termination by Defendants for exercising his First Amendment right to free speech, taken under color of law, Bey has sustained and will continue to sustain lost wages and other benefits of employment, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation.

87.     The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Bey's constitutional rights as set forth above.

WHEREFORE, Plaintiff Bey prays this Court to enter judgment in his favor and against the Defendants and thereafter:

A.     Order Defendants to make Plaintiff Bey whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B.     Award damages to Plaintiff Bey for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation;

C.     Award Plaintiff Bey punitive damages against the Defendants named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiff Bey the costs of this action, together with his reasonable attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT V – BEY'S WRONGFUL DISCHARGE IN VIOLATION
## OF PUBLIC POLICY – WHISTLEBLOWING

For Count V of Plaintiff Bey's cause of action against all Defendants, he states as follows:

88.     Plaintiff incorporates by reference as if fully set forth herein paragraphs 1 through 87 of this Complaint.

89.     Bey entered into the performance of his duties as a police office for the City of Moline Acres and duly performed his duties under the terms and conditions of his employment until his termination by Hodges on June 19, 2007.

90.     Bey was discharged by the Defendants because he had reported to the Chief of Police that Hodges had attempted to use his elected position to get a DWI ticket issued to a friend of his 'fixed," contrary to the public policy and laws of the State of Missouri.

91.     Bey remains ready, willing and able to continue in his position as a police officer for the City and to perform all the terms and conditions of that position.

92.     Defendants were aware of Bey's whistle blowing activity when he fired Bey.

93.     Bey's termination was in violation of Missouri public policy, which prohibits at-will employees from being terminated for reporting misconduct that violates Missouri law or public policy.  An elected official interfering with the duties of a law enforcement officer violates not only the public policy of the State, but to the extent that Hodges attempted to "fix" a DWI ticket, his actions constituted an attempted tampering with a public record in violation of § 575.110 R.S.Mo.

94.     As a result of his termination in violation of public policy, Bey has

sustained and will continue to sustain lost wages and other benefits of employment and has suffered emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

95.     The Defendants' conduct was outrageous because of their evil motive and reckless indifference to the rights of Bey in wrongfully terminating his employment in retaliation for reporting the wrongful and/or illegal acts of Hodges, and therefore, an award of punitive damages is warranted and necessary to punish Defendants in their individual capacities and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Bey prays this Court to enter judgment in his favor and against Defendants and thereafter:

A.     Order Defendants to make Plaintiff Bey whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B.     Award damages to Plaintiff Bey for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

C.     Award Plaintiff Bey punitive damages against the Defendants named herein in their individual capacities in such sums as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiff Bey the costs of this action, together with his reasonable attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT VI – BEY'S WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY – ACTING IN A MANNER PUBLIC POLICY WOULD ENCOURGAGE AND/OR DISCHARGE IN VIOLATION OF STATE LAW

For Count VI of Plaintiff Bey's cause of action against all Defendants, he states as follows:

96.     Plaintiff Bey incorporates by reference as if fully set forth herein paragraphs 1 through 95 of this Complaint.

97.     Bey's termination was in contravention of Missouri public policy, which prohibits an at-will employee from being terminated for acting in a manner public policy would encourage.  Specifically, Missouri public policy would encourage a police officer to refuse to bow to political pressure when asked to "fix" a DWI ticket for an elected official's friend and to report such a request to the appropriate authority.

98.     Alternatively and without waiver of the foregoing, the public policy of the State of Missouri with respect to the removal of appointive officers of fourth class cities is set forth in § 79.240 R.S.Mo., which states as follows:

> The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation.   See Exhibit 1.

99.     Plaintiff's termination violates the public policy of the State of Missouri as set forth in § 79.240 because it occurred without the consent of a majority of all the members of the elected Board of Aldermen, and as a result to further Hodges' political agenda to retaliate against Brandon for blowing the whistle on his misconduct, rather than in the best interest of the City.

100.     As a result of his termination in violation of public policy, Bey has

23

sustained and will continue to sustain lost wages and other benefits of employment and has suffered emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

101.    The Defendants' conduct was outrageous because of their evil motive and reckless indifference to the rights of Bey in wrongfully terminating his employment or ratifying/tacitly approving such termination in retaliation for taking actions that the public policy of the State of Missouri would encourage, and therefore, an award of punitive damages is warranted and necessary to punish Defendants in their individual capacities and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Bey prays this Court to enter judgment in his favor and against the Defendants and thereafter:

A.    Order Defendants to make Plaintiff Bey whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B.    Award damages to Plaintiff Bey for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

C.    Award Plaintiff Bey punitive damages against the Defendants named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.    Award Plaintiff Bey the costs of this action, together with his reasonable attorneys' fees; and

E.    Grant such other and additional relief as may appear to the Court to be

equitable and just under the circumstances.

## COUNT VII -- 42 U.S.C. SECTION 1983
## VIOLATION OF BROWN'S FIRST AMENDMENT RIGHT TO FREE SPEECH

For Count VII of Plaintiff Brown's cause of action against all Defendants, she states as follows:

102.    Plaintiff incorporates by reference as if fully set forth herein paragraphs 1 through 101 of this Complaint.

103.    Brown was suspended without pay without cause or justification by the Defendants as set forth herein and/or the Defendants demonstrated deliberate indifference to or tacitly authorized the constitutional violation alleged herein after notice and failed to take sufficient remedial action, so that their failure to act proximately caused Plaintiff's constitutional injuries alleged herein.

104.    Brown's speech and more specifically her expression as a private citizen to the Mayor and Board at a reasonable time and in a reasonable manner of concerns that the Board's compensation to itself was preventing the police department from receiving the budget it required was a motivating factor and/or played a part in the Defendants' decision to suspend Brown without pay for a pretextual reason.

105.    Brown's speech set forth in paragraph 104 above constituted speech regarding matters of public concern.

106.    Brown's constitutionally protected interest in free speech regarding matters of public concern outweighs any interests Defendants might have in preventing such speech.

107.    Brown's protected speech made at a reasonable time and in a reasonable manner did not render the City's government inefficient, and Brown's speech did not

disrupt City operations in any way.

108.    Brown's four month unpaid suspension qualifies as an adverse employment action authorized and approved by the Defendants acting under color of state law.

109.    Brown's unpaid suspension by Defendants under color of state law violates her rights secured by the Constitution of the United States, specifically the First Amendment.

110.    As a direct and proximate result of Brown's unpaid suspension in retaliation for her exercising her First Amendment right to free speech, taken under color of law, Brown has sustained lost wages and benefits, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation.

111.    The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Brown's constitutional rights, justifying an award of punitive damages, and therefore, an award of punitive damages is warranted and necessary to punish Defendants in their individual capacities and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Brown prays this Court to enter judgment in her favor and against Defendants and thereafter:

A.    Order Defendants to make Plaintiff Brown whole for any and all loses or damages she has suffered including lost wages, benefits, and attorneys' fees to defend the baseless allegation made against her by Hodges;

B.    Award damages to Plaintiff Brown for her emotional pain and suffering,

mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation;

C.     Award Plaintiff Brown punitive damages against the Defendants named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiff Brown the costs of this action, together with her reasonable attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

**COUNT VIII**
**CONSPIRACY TO VIOLATE PLAINTIFFS' CIVIL RIGHTS**
**COGNIZABLE UNDER 42 U.S.C. § 1983**

For Count VIII of all Plaintiffs' cause of action against Defendants Hodges, DeShay, Rice, Thomas and Young, Plaintiffs state as follows:

112.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 111 of this Complaint as though fully set forth herein.

113.     Defendants Hodges, DeShay, Rice, Thomas, and Young acting under color of law, conspired together and amongst themselves and reached a mutual understanding to undertake a course of conduct that violated Plaintiffs' civil rights.  In furtherance of this conspiracy, these Defendants committed the following overt acts:

a)  Fired Plaintiff Brandon without cause of justification because of his

b)  exercise of his First Amendment rights;

c)  Fired Plaintiff Bey without cause of justification because of his exercise of his First Amendment rights;

27

d)  Suspended Plaintiff Brown without cause of justification because of
her exercise of her First Amendment rights;

114.    Defendants  Hodges, DeShay, Rice, Thomas, and Young shared the
general conspiratorial objective, which was to violate the Plaintiffs' constitutional rights
and to thereafter conspire to insulate themselves from sanction by concealing the true
reasons for Plaintiffs' termination or suspension.  Additionally, the acts alleged herein
were committed by those with final policymaking authority and such conduct is so
pervasive in the City and is so effective to insulate the City's elective officials from civil
sanction that Defendants Hodges, DeShay, Rice, Thomas, and Young felt free to engage
in the misconduct as aforedescribed without fear of sanction or retribution.

115.    These Defendants furthered the conspiracy by participating in it from its
inception or by participating in the cover-up and/or ignoring this course of conduct so as
to insulate themselves and others from liability for the outrageous and unlawful acts of
the Defendants as described herein.

116.    As a direct and proximate result of the Plaintiffs' termination/suspension
by Defendants for exercising their First Amendment right to free speech, taken under
color of law, Plaintiffs have sustained and/or will continue to sustain lost wages and other
benefits of employment, emotional pain and suffering, mental anguish, inconvenience,
humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation.

117.    The acts of Defendants as set forth herein were taken under the color of
state law.  Defendants Hodges, DeShay, Rice, Thomas, and Young participated in the
conduct alleged herein or ratified it.

118.    The conduct of Defendants and each of them jointly and separately was

reckless and callously indifferent to the constitutional rights of Plaintiffs, malicious and wanton with respect to those rights and an award of punitive damages is warranted and necessary to punish Defendants in their individual capacities and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiffs pray this Court to enter judgment in their favor and against Defendants Hodges, DeShay, Rice, Thomas, and Young and thereafter:

A.      Order Defendants Hodges, DeShay, Rice, Thomas, and Young to make Plaintiffs whole for any and all loses or damages they have suffered including lost wages and other benefits of employment and/or expenses incurred in defending these baseless actions;

B.      Award damages to Plaintiffs for their emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation;

C.      Award Plaintiffs punitive damages against Defendants Hodges, DeShay, Rice, Thomas, and Young named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.      Award Plaintiffs the costs of this action, together with their reasonable attorneys' fees; and

E.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT IX
## CIVIL CONSPIRACY

For Count IX of all Plaintiffs Brandon and Bey's cause of action against Defendants Hodges, DeShay, Rice, Thomas and Young, Plaintiffs state as follows:

119.    Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 118 of this Complaint as though fully set forth herein.

120.    Defendants Hodges, DeShay, Rice, Thomas and Young,  or two or more of them, entered into an agreement or understanding amongst and between themselves to do an unlawful act, to wit, to wrongfully discharge Plaintiffs in violation of the public policy of the State of Missouri as set forth herein.

121.    Defendants (constituting two or more people) had an unlawful objective to commit the unlawful discharge of Plaintiffs as set forth in paragraph 120 above.

122.    The Defendants had a unity of purpose, common design and understanding, and/or meeting of the minds to discharge Brandon and Bey in violation of the public policy of the State.

123.    In furtherance of the conspiracy alleged herein, Defendants took the overt act of terminating Brandon on or about September 26, 2007 and terminating Bey on or about June 19, 2007.  Any reasons that Defendants may now provide for the termination of Brandon and Bey are nothing more than pretext for firing them in violation of the public policy of the State.

124.     As a direct and proximate result of Plaintiffs Brandon and Bey's termination by Defendants in violation of the public policy of the State, they have sustained and will continue to sustain lost wages and other benefits of employment, diminished employment opportunities and emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation.

125.    Defendants' conduct was outrageous because of their evil motive and

reckless indifference to the rights of Plaintiffs Brandon and Bey in wrongfully terminating their employment in violation of the public policy of the State of Missouri, and therefore, an award of punitive damages is warranted and necessary to punish Defendants in their individual capacities and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiffs Brandon and Bey pray this Court to enter judgment in their favor and against Defendants Hodges, DeShay, Rice, Thomas, and Young and thereafter:

A.      Order Defendants Hodges, DeShay, Rice, Thomas, and Young to make Plaintiffs whole for any and all loses or damages they have suffered, including lost wages and other benefits of employment;

B.      Award damages to Plaintiffs for their emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation;

C.      Award Plaintiffs punitive damages against Defendants Hodges, DeShay, Rice, Thomas, and Young named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.      Award Plaintiffs the costs of this action, together with their reasonable attorneys' fees; and

E.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

31

Respectfully submitted,

PLEBAN & PETRUSKA LAW, LLC


By   /s/ C. John Pleban
    C. John Pleban #4066
    Lynette M. Petruska, #15880
    2010 S. Big Bend Blvd.
    St. Louis, MO  63117
    Telephone:  314-645-6666
    Facsimile:  314-645-7376

    Attorneys for Plaintiffs